IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JAMES P. BURG,<br>Reg. No. 35786-298,<br>　　Petitioner, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | EP-18-CV-293-FM |
| SCOTT NICKLIN, Warden,<br>　　Respondent. | | |

## MEMORANDUM OPINION AND ORDER

Petitioner James P. Burg petitions the Court to intervene in his behalf and order Respondent Scott Nicklin to release him to home detention on December 13, 2018. Pet'r's Pet. 6–8, ECF No. 1-1. He also asks the Court to expedite its decision. Pet'r's Mot. to Expedite, ECF No. 2. After due consideration, the Court will deny Burg's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241 because it appears from its face that his claims are unexhausted and, in the alternative, that he is not entitled to § 2241 relief.

## BACKGROUND

Burg is a 68-year-old white male. Pet'r's Pet., Ex., p. 11, ECF No. 1-2. He is serving a 90-month sentence for mail fraud and willfully failing to file a tax return at the La Tuna Federal Correctional Institution in Anthony, Texas.[1] *United States v. Burg*, 1:12-cr-00450-JLK-1 (D. Colo.). His projected release date is June 13, 2019. Pet'r's Pet., Ex., p. 2. He requires "hip and knee replacement and because of severe pain [he] is not mobile." *Id.* at p. 13.

Officials at La Tuna submitted paperwork to the Residential Reentry Manager's Office (RRMO). *Id.* at p. 2. They wanted to place Burg in a Residential Reentry Center (RRC) in Las Cruces, New Mexico, beginning on November 13, 2018. *Id.* Burg apparently asked for home confinement because

---

[1] Anthony is located in El Paso County, Texas, which is within the Western District of Texas. 28 U.S.C. § 124(d)(3) (2012).

he wanted his wife to arrange for his medical care, but inmates must undergo an evaluation at a RRC before placement in home confinement. *Id.* at p. 2. 13. An official in the RRMO reviewed the paperwork and, "based on bed space availability," determined that the RRC could not accept Burg until April 16, 2019. *Id.* at 2.

Burg now argues Nicklin acted "arbitrarily, capriciously, and in a discriminatory manner" when he "changed" Burg's "release date" from December 13, 2018,[2] to April 18, 2019. Pet'r's Pet. 7. He maintains Nicklin also violated the Second Chance Act—which requires that the Director, "to the extent practicable," ensure prisoners spend the final portion of their sentences under conditions which will afford them a "reasonable opportunity" to reenter society—when he changed his "release date." *Id.*, Ex., p. 6 (citing 28 U.S.C. § 3624(c)(1)). Burg further suggests Nicklin discriminated against him based on his race (white), as at least two Hispanic inmates received more RRC time than he did. *Id.*, Ex. 11–12.

## APPLICABLE LAW

A writ of habeas corpus under 28 U.S.C. § 2241 provides the proper procedural vehicle in which to raise an attack on "the manner in which a sentence is executed." *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir. 2000). However, "[h]abeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that . . . if condoned, result in a complete miscarriage of justice.'" *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). To prevail, a habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c) (2012).

During its initial screening of a habeas corpus petition, a reviewing court accepts a petitioner's

---

[2] This date differs from the date proposed by the La Tuna officials.

allegations as true. 28 U.S.C. § 2243; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). It also evaluates a petition presented by pro se petitioner under more a lenient standard than it would apply to a petition submitted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). It must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

## ANALYSIS

### A. Exhaustion

An initial issue a court must address when screening a § 2241 petition is whether the petitioner has exhausted his administrative remedies. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam). A petitioner seeking habeas relief must first exhaust all administrative remedies which might provide appropriate relief before seeking judicial review. *Id.*; *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). Exhaustion means "proper exhaustion," including compliance with all administrative deadlines and procedures. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion under the Prison Litigation Reform Act).

The Bureau of Prisons ("BOP") uses a multi-tiered administrative remedy program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). First, the inmate must attempt to resolve the issue informally with the prison staff. *Id.* § 542.13(a). Then, if the inmate cannot resolve the complaint informally, he must file a formal written administrative remedy request on a BP-9 form directed to the prison warden. *Id.* § 542.14. Any adverse decision by the warden must be appealed to the appropriate regional director by filing a BP-10

form. *Id.* § 542.15(a). The final step in the administrative review process is an appeal to the Office of General Counsel on a BP-11 form. *Id.* If an inmate does not receive a response within the time allotted, he may consider the absence of a response a denial at that level and proceed to the next level. *Id.* An inmate may seek relief in federal court only after he has exhausted all levels of the administrative review process. *See Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.").

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller*, 11 F.3d at 62 (internal citations omitted). Exceptions may be made only in "extraordinary circumstances," and the petitioner bears the burden of demonstrating the futility of administrative review. *Id.*

In this case, Burg suggests he exhausted his claim through the BOP's review process. Pet'r's Pet. 2-3. He presents evidence the warden rejected his BP-9 form because he "did not attempt informal resolution prior to submission." *Id.*, Ex., p. 10. He presents evidence the regional office rejected his BP-10 form because he did not file it at the institution level, "did not attempt informal resolution prior to submission," did not submit the appeal on the proper form, and did not "attempt an informal resolution using the correct form and submit [it] at the institutional level." *Id.* at p. 7. He also presents evidence the central office concurred with the "rationale of the regional office and/or institution" for rejecting his request for an administrative remedy and noted he submitted his appeal at the "wrong level." *Id.* at p. 4.

The evidence Burg submits shows he has not properly exhausted his claim in compliance with all of the BOP's administrative procedures. Further, he does not contend administrative remedies are either unavailable or wholly inappropriate for the relief he seeks. Moreover, he does not assert that exhausting

his claim would be futile in the sense that the BOP routinely rejects similar claims. Thus, Burg has not met his burden of showing that the Court should apply an exception to the exhaustion requirement. Hence, the Court concludes Burg has not exhausted and dismissal is warranted on that basis alone. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies).

But even if Burg had properly exhausted, the Court would not grant him § 2241 relief.

### B. Authority of the Bureau of Prisons to Place Inmates

The Court notes that two statutes govern the discretion of the BOP to place an inmate in a particular facility: 18 U.S.C. § 3621(b), which addresses the imprisonment of a convicted person, and the Second Chance Act of 2007, Pub. L. 110–199, 122 Stat. 692 (Apr. 9, 2008), which provides for post-imprisonment rehabilitation services.

Section 3621(b) grants the BOP the authority and discretion to designate the place of confinement. Under § 3621(b), the BOP:

> may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable.

18 U.S.C. § 3621(b) (2012). In making this determination, the BOP must consider "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . and (5) any pertinent policy statement issued by the Sentencing Commission[.]" *Id.*

The Second Chance Act directs "a shift from policing those on parole to rehabilitating them," and places on the "parole system . . . an increasing special obligation to help federal offenders successfully

reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed to rehabilitate prisoners and reduce recidivism. *Id.* The Act also addresses placement in a community corrections facility such as a halfway house. 18 U.S.C. § 3624(c) (2012). It grants the BOP Director the discretion to place a prisoner in a community corrections facility for up to twelve months, instead of limiting that time to six months as permitted by the prior law. *Id.* The Act authorizes the Director, "to the extent practicable, . . . to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." *Id.* It also directs the BOP to issue new regulations to ensure that placements in community correctional facilities are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* § 3624(c)(6).

The BOP adopted regulations implementing the Second Chance Act, codified at 28 C.F.R. §§ 570.20–.22, effective October 21, 2008. Both the statute and the regulations instruct the BOP to make a determination on the amount of time a prisoner should spend in residential reentry center "on an individual basis." *Id.*; 28 C.F.R. § 570.22.

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in any particular place. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its

prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).[3]

Moreover, a petitioner complaining about a BOP assignment is not entitled to judicial relief for an alleged "violation of his Fifth Amendment right to due process because 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest.'" *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981))); *accord Nativi–Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003); *see also Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege . . ., denial of such relief cannot violate a substantive interest protected by the Due Process clause."); *cf. Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[A] statute which 'provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process.'") (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)).

Here, Burg asserts he requires "hip and knee replacement and because of severe pain [he] is not mobile." Pet'r's Pet., Ex., p. 13. Under § 3621, the BOP is specifically permitted to consider "the

---

[3] The statutory language in 18 U.S.C. § 4082(b) was re-codified through Pub. L. 94-473, Title 2 II, § 212(a)(2), Oct. 12, 1984, and is currently found at 18 U.S.C. § 3621(b).

history and characteristics of the prisoner." 18 U.S.C. § 3621(b)(3). Such an analysis logically includes an assessment of the prisoner's medical condition. Someone in the RRMO reviewed Burg's paperwork and, "based on bed space availability," determined that the RRC could not accept Burg until April 16, 2019. *Id.* at 2. A decision denying a federal prisoner RRC placement, based on his medical conditions and bed space availability, is a reasonable exercise of the BOP's discretion and prison officials' authority, under the statutes and the relevant regulations and policies. *See Zerby v. Keffer*, No. 4:10–CV–197–Y, 2010 WL 3835235, at *2 (N.D. Tex. Sept. 1, 2010).

Furthermore, the documents which Burg attached to his petition do not in any way support his assertion that Nicklin or any other BOP employee discriminated against him based on his race (white). "Although *pro se* habeas petitions must be construed liberally, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'" *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *cf. Ross v. Estelle*, 694 F.2d 1008, 1011–12 & n.2 (5th Cir.1983) (refusing to hold evidentiary hearing based on petitioner's bare assertions of ineffective assistance); *cf. Russell v. Lynaugh*, 892 F.2d 1205, 1213–14 (5th Cir.1989) (concluding that petitioner failed to allege facts of actual conflict of interest warranting habeas relief and, therefore, refusing to remand for evidentiary hearing on that claim).

Thus, after reviewing Burg's petition and the applicable statutes, the Court finds that the BOP has exclusive authority and discretion to determine if and when to assign Burg to a RRC or home confinement. The Court further finds the record does not support a conclusion that Nicklin acted "arbitrarily, capriciously, and in a discriminatory manner," violated the Second Chance Act or discriminated against Burg based on his race (white).

## CONCLUSIONS AND ORDERS

Accordingly, the Court finds that Burg has not only failed to exhaust his administrative remedies, but also has no constitutional or statutory right to placement in a RRC or home confinement. The Court concludes, therefore, that it appears from the face of Burg's petition and other pleadings that he is not entitled to § 2241 relief.

The Court, therefore, enters the following orders:

**IT IS ORDERED** that Petitioner James P. Burg's "Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241" (ECF No. 1-1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust.

**IT IS ALSO ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SO ORDERED.**

SIGNED this _12_ day of October, 2018.

FRANK MONTALVO
**UNITED STATES DISTRICT JUDGE**